**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



_Russ Kendig_
**Russ Kendig**
**United States Bankruptcy Judge**

Dated: 05:09 PM July 7, 2014

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| CHARLES MICHAEL INGLE AND | ) | CASE NO. 11-63680 |
| REVA LYNCH INGLE | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtors. | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION (NOT** |
| | ) | **INTENDED FOR PUBLICATION)** |
| | ) | |

    Attorney Thomas K. Mast, who is Charles Michael Ingle and Reva Lynch Ingle's (collectively, "Debtors") bankruptcy attorney, filed a motion to withdraw as Debtors' attorney on May 28, 2014. Debtors filed a response to Mr. Mast's motion to withdraw on June 3, 2014. Mr. Mast and Debtors both approve of Mr. Mast's withdrawal, but Debtors also request that Mr. Mast return one-half of his legal fees to assist Debtors in paying for a new attorney. The court held a hearing on June 25, 2014, following which the court took the matter under advisement. The following constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

    The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

    This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

1

## Facts

Mr. Mast filed Debtors' voluntary chapter 13 bankruptcy petition on November 21, 2011. To assist in preparing the bankruptcy petition, Debtors and Mr. Mast met every other Saturday from July through December. Included with Debtors' petition were the necessary bankruptcy schedules, a confirmation review summary, a chapter 13 plan, and other required documents. In addition to compiling and filing Debtors' bankruptcy schedules, Mr. Mast also navigated Debtors' case through the plan confirmation process, which encountered more roadblocks than most cases. It appears to the court that the difficulty arose from Debtors' desire to keep too much and spend too much. For example, on December 12, 2011, Huntington National Bank ("Huntington") objected to Debtors' chapter 13 plan based on the treatment of a mortgage. Similarly, Toby Rosen, the United States chapter 13 panel trustee ("Trustee"), objected to Debtors' chapter 13 plan on December 28, 2011, based on a belief that Debtors' claimed expenses were excessive. While Mr. Mast was able to work out an agreed order with Huntington, the court nevertheless denied confirmation on April 16, 2013 based on Trustee's objection. Less than a month later, Mr. Mast filed an amended chapter 13 plan. While Trustee initially objected to the amended plan, the objection was later withdrawn and the court confirmed Debtors' plan on July 26, 2012. Even after confirmation, Mr. Mast's work continued. Trustee filed two different plan modifications seeking to increase Debtors' monthly plan payments, but Mr. Mast objected to each modification. Mr. Mast and Trustee eventually reached an agreed order resulting in a relatively modest monthly plan payment increase.

Even with the completion of the above noted work, the relationship between Debtors and Mr. Mast turned contentious early in the bankruptcy process. For example, Mr. Mast claims that Debtors expressed frustration over the inability to obtain "immediate confirmation" of their chapter 13 plan.[1] (Mot. to Withdraw as Att'y for Debtors 2). Additionally, a dispute arose regarding a loan between Debtors and Huntington. Debtors claim that Mr. Mast forgot to include the Huntington loan within their bankruptcy petition, while Mr. Mast argues he never received the information. After a heated telephone discussion concerning the Huntington loan, Debtors allege that Mr. Mast refused to continue speaking with Debtor-husband and instead would only talk with Debtor-wife. (Resp. to Mot. to Withdraw 21). Debtors are also dissatisfied because their cumulative mortgage payments under the plan have been $9,945.00 larger than Mr. Mast's estimate. Id. at 9.

The current dispute, which is the main impetus for Mr. Mast's motion to withdraw, centers around Debtors' attempt to sell their residence, pay off their creditors, and move to North Carolina. According to Mr. Mast, he has requested information from Debtors on at least two occasions relating to the sale of Debtors' residence. (Mot. to Withdraw as Att'y for Debtors 3). The information, if timely provided, would give Mr. Mast the information necessary to seek court approval of the sale of Debtors' property. Mr. Mast's motion to withdraw states that "[b]ased on my previous dealings with [Debtors], I am sure that I will not have the cooperation necessary to provide the bankruptcy sale-of-assets services." Id. Mr. Mast also cites a letter from

---

[1] There was an eight month time span between the initial bankruptcy filing and the court's confirmation of Debtor's plan. While longer than average, an eight month time frame is well within the normal range.

2

Debtors claiming that Mr. Mast was paid legal fees in excess of what he actually received and demanding a partial refund.[2] According to Mr. Mast, the combination of the above factors makes the "continuing representation [of Debtors] impossible and destructive." Id.

In contrast, Debtors believe they provided the information required to sell their home, and any problems in the current case are a result of Mr. Mast's lack of effort or ability. After Debtors lost faith in Mr. Mast, they approached attorney Thomas White with questions. A quick check of the court's Electronic Case Filing ("ECF") system does not give any indication that Mr. White has practiced in the U.S. Bankruptcy Court for the Northern District of Ohio. Mr. White informed Debtors that they did not need his services because their case "is so simple and cut and dried." (Resp. to Mot. to Withdraw 1). This statement appears to have reinforced Debtors' belief that Mr. Mast has not performed adequately. Mr. White also informed Debtors that because the majority of the bankruptcy work was already completed, Mr. Mast should be allowed to finish the case. Id. Finally, the court notes that during the hearing held on June 25, 2014, it was clear that Mr. Mast and Debtors are not on good terms and maintaining an attorney-client relationship would be difficult.

**Law & Analysis**

The approval or denial of an attorney's motion to withdraw is within the discretion of the court. Burrage v. Homecomings Fin. Network, Inc. (In re Burrage), 2010 WL 3239357, at *2 (Bankr. N.D. Ohio 2010). While courts are given wide latitude in making attorney withdrawal decisions, local rules provide a framework. Local Bankruptcy Rule 2091-1 addresses attorney withdrawal in a bankruptcy case and states that withdrawal "shall be permitted only by the filing of a motion for withdrawal, a showing of good cause, and upon such terms as the court shall impose." Bankr. N.D. Ohio R. 2091-1(a). The motion to withdraw shall also contain the client's written consent "or an explanation why the client's written consent was not obtained." Id.[3] The local civil rules for the Northern District of Ohio are similar, stating that an attorney may not withdraw "without first providing written notice to the client and all other parties and obtaining leave of the Court." N.D. Ohio R. 83.9.

In helping to determine if an attorney's motion to withdraw should be granted, many courts have looked to the Ohio Rules of Professional Conduct, which provide:

> (b) . . . a lawyer may withdraw from the representation of a client if any of the following applies:
> (1) withdrawal can be accomplished without material adverse effect on the interests of the client; . . .

---

[2] Debtors allege that Mr. Mast has been paid $1,811.00 for his representation, consisting of $811.00 from Debtors and another $1,000.00 from the Trustee's office. (Resp. to Mot. to Withdraw 2). Debtors provided receipts for the following payments: $500.00 retainer dated July 8, 2011; $281.00 case filing fee dated November 19, 2011; and a $30.00 filing fee related to amended schedules dated January 14, 2012. Documentary evidence of Trustee's $1,000.00 payment to Mr. Mast was not submitted to the court.

[3] While Mr. Mast's motion to withdraw did not include client consent, the court hearing made clear that the motion to withdraw lacked Debtors' consent because Debtors did not consent.

> (5) the client fails substantially to fulfill an obligation, financial or otherwise, to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
> (6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; . . .
> (9) other good cause for withdrawal exists.

Ohio Rules of Prof'l Conduct R. 1.16(b); Brandon v. Blech, 560 F.3d 536, 538 (6th Cir, 2009); Sims v. Charter One Bank, 2011 WL 6934806, at *2 (N.D. Ohio 2011); In re Burrage, 2010 WL 3239357, at *2. In the current case, no evidence has been presented suggesting a material adverse effect in violation of Rule 1.16(b)(1) will befall Debtors if Mr. Mast is allowed to withdraw. To the contrary, it appears that the majority of the bankruptcy work is complete and the largest remaining item is the sale of Debtors' residence, an issue that is not tightly interwoven with the specific facts of this bankruptcy case. Mr. Mast also claims, although the claim is disputed, that Debtors have failed to produce documentation relating to a potential sale of Debtor's property even after multiple requests. There is also a dispute over the amount of legal fees paid to Mr. Mast and whether any of the fees should be returned to Debtors. Previous court decisions have determined that disputes over fees, disagreements about if and when documents were provided, or conflicting views on procedural or tactical decisions may make an attorney's continued representation "unreasonably difficult" under Rule 1.16(b)(6). See In re Burrage, 2010 WL 3239357, at *3. Additionally, Rule 1.16(b)(9) allows withdrawal when there is "other good cause," and the lack of trust between Debtors and Mr. Mast weighs heavily in favor withdrawal. For example, "when the attorney-client relationship appears irreversibly broken, it is not in the best interest of the parties to force a nonworking relationship." In re Burrage, 2010 WL 3239357, at *4; see also Gerber v. Riordan, 2012 WL 366543, at *12 (N.D. Ohio 2012) ("Clearly, the resonance of distrust and acrimony expressed by Plaintiff toward [his attorneys] cannot but create an atmosphere ripe for conflict of interest, and sufficient to justify said attorneys withdrawal from representation."). It is also important that Debtors and Mr. Mast agree that withdrawal is appropriate. The court will allow Mr. Mast's withdrawal as Debtors' attorney.

The remaining issue is the amount of Mr. Mast's fees, if any, that should be returned to Debtors. The court has documentary evidence of $811.00 in payments made to Mr. Mast, $500.00 for Mr. Mast's legal services and $311.00 to cover court filing fees. Even if the court received documentary evidence of Trustee's $1,000.00 payment to Mr. Mast, the court would still not require Mr. Mast to return any legal fees. The substantial work completed by Mr. Mast, as outlined above, justifies his payment. The bulk of a fixed bankruptcy fee is for the preparation of schedules and related documents, and to obtain plan confirmation. Substantial post-confirmation activities, such as a real estate sale, nearly always entitle a debtor's attorney to additional fees.

## Conclusion

Based on the above analysis, Mr. Mast's Motion to Withdraw as Attorney for Debtors is **GRANTED**.

It is so ordered.

# # #

**Charles Michael Ingle**
5708 Township Road 127
Millersburg, OH 44654

**Reva Lynch Ingle**
5708 Township Road 127
Millersburg, OH 44654

**Thomas Karl Mast**
111 South Buckeye Street
Suite 240
Wooster, OH 44691

**Toby L Rosen**
Toby L Rosen, Trustee
400 W Tuscarawas St
Charter One Bank Bldg, 4th Floor
Canton, OH 44702